234 So.2d 390 (1970)
LIBERTY MUTUAL INSURANCE COMPANY, Appellant,
v.
D. Blake FLITMAN, Appellee.
No. 69-660.
District Court of Appeal of Florida, Third District.
April 21, 1970.
*391 Ralph, Boyd & Anderson, Miami, and Donald F. Geffner, for appellant.
Harvey Richman, and Harris J. Buchbinder, Miami Beach, for appellee.
Before CHARLES CARROLL, HENRY and SWANN, JJ.
PER CURIAM.
Liberty Mutual Insurance Company appeals from a final judgment rendered for plaintiff after a non-jury trial.
Liberty issued an insurance policy for one year to D. Blake Flitman for coverage on his yacht. The policy covered all risks of physical loss to the vessel but specifically excluded coverage for losses due to inherent vice, unseaworthiness, or repair or replacement of a part in which a latent defect was found.
Two identical masts failed on separate occasions on the yacht while Flitman was competing in ocean racing. The two masts failed and the vessel suffered loss of sails, rigging, and other equipment, under similar conditions. Flitman made a claim for these losses under the hull portion of the insurance policy on the yacht. Liberty denied any coverage and ultimately this suit was filed and a final judgment rendered for Flitman.
On appeal, Liberty argues that the trial court erred in finding that the failure of the two masts on Flitman's vessel did not result from inherent vice, latent defect, or unseaworthy condition.
The record on appeal reveals sufficient, substantial and competent evidence to sustain this finding by the trial judge in the non-jury case and to also establish that Liberty failed to carry its burden of proof that these losses were excluded under the provisions of the policy. See Fire Ass'n of Philadelphia v. Evansville Brewing Ass'n, 73 Fla. 904, 75 So. 196 (1917); Allstate Insurance Company v. Coin-O-Mat, Inc., Fla.App. 1967, 202 So.2d 598; and 18 Fla.Jur. Insurance § 431.
Liberty argues that reversible error was committed when the trial court would not permit it to take the deposition, or subpoena the records of plaintiff's attorney or require the plaintiff to answer certain written interrogatories.
The evidence sought to have been elicited may have been privileged. 35 Fla.Jur. Witnesses § 144-146. This also appears to have been an attempt by Liberty to inquire into and discover the facts involved in the settlement negotiations of a disputed claim which the plaintiff had against the manufacturer and seller of the yacht. This is not generally permitted. See Jordan v. City of Coral Gables, Fla. 1966, 191 So.2d 38, affirming Fla.App. 1966, 186 So.2d 60; and 29 Am.Jur.2d Evidence § 632.
Assuming the facts which Liberty sought to ascertain were a proper subject matter for discovery under the broad purposes presently permissible, we find that the action of the trial court in refusing to permit inquiry into this specific area amounted to harmless error at most. § 59.041, Fla. Stat., F.S.A.
*392 The trial court struck the fifth defense asserted in the answer of Liberty and it claims reversible error. The fifth defense alleged that Flitman had violated Condition Ten of the insurance policy by giving a release to the manufacturer and seller of the yacht and the insurance policy was, therefore, null and void.
Condition Ten provides:
"Impairment of Right of Recovery  Any agreement, contract or act, past or future, positive or implied, by the insured whereby any right of recovery of the insured against any vessel, person or organization is released, decreased, transferred or lost, which would on payment hereunder by the company belong to the company but for such agreement, contract or act, shall render this policy null and void as to the amount of any such loss or damage, but the company's right to retain or recover the full premium shall not be effected."
Liberty does not argue incorrect procedure herein but only that there was an inaccurate and incorrect application of the substantive law to these facts. We, therefore, pretermit any opinion or discussion concerning the procedural question involved herein. Liberty claims that since it denied these claims in good faith it cannot be held to have waived, or to be estopped, from asserting that the actions of Flitman in giving a release violated its subrogation rights, and that, therefore, the policy was null and void under Condition Ten. It concedes that if its denial of coverage were in a case where coverage and liability were definite and certain that it would be proper to hold that it had waived or was estopped to deny coverage.
In Dinn Oil Company v. Hanover Insurance Company, 87 Ill. App.2d 206, 230 N.E.2d 702, the court, in response to a similar argument, said:
* * * * * *
"* * * We hold that defendants, having denied liability, may not now invoke the execution of the release as a defense to plaintiff's suit on the policies, and plaintiff's recovery of a portion of the amount claimed from a third party, and the execution of a release releasing that third party, would not relieve defendants of liability under their respective policies."
* * * * * *
In Powers v. Calvert Fire Ins. Co., 216 S.C. 309, 57 S.E.2d 638, the court said at p. 642:
* * * * * *
"An insurer will not be permitted to profit from such a course of conduct. It cannot sit down and hold its hands and purse and thereafter escape liability for fulfillment of its contract by reason of the insured's effort, after fair notice, to recoup his loss by litigation against a wrongdoer. Appellant asserts that its right of subrogation has been destroyed by the voluntary act of the insured, but the right did not survive the recited conduct of appellant which amounted at least to waiver. Subrogation arises upon payment and, in default of that, appellant relies upon the last sentence of the subrogation clause of the policy which is quoted supra: `The insured shall do nothing after loss to prejudice such rights.' The simple answer is that the provision is not now available to appellant because of its conduct which amounted to a breach of the contract of insurance and resulted in waiver of the right of subrogation. * * *"
* * * * * *
"* * * It would be highly inequitable under the facts of this case to allow appellant to shield itself from liability upon its contract obligation by the ghost of a formerly available right of subrogation. Waiver is an established doctrine in such cases. * * *"
* * * * * *
See also Roberts v. Fireman's Ins. Co. of Newark, N.J., 376 Pa. 99, 101 A.2d 747 (1954); 38 A.L.R.2d 1095, 1099; 16 A.L.R. *393 1269; and Couch on Insurance 2d, §§ 61.15 and 61.189. We do not believe that the "good faith" argument advanced by Liberty is sufficient to disregard or overrule the rule as pronounced by these cases.
The case of De Cespedes v. Prudence Mut. Cas. Co. of Chicago, Ill., Fla.App. 1966, 193 So.2d 224, is distinguishable. In De Cespedes, we held that an insured was not entitled to recovery under the medical payment coverage of his automobile policy which contained a subrogation clause after he had settled his claim and executed a full release to a third party tort-feasor. There, the release was executed prior to making any claim against the insuror. By executing the release therein the insured destroyed any possible right to subrogation and breached the "no prejudice" clause of the policy. Here, claims were made by Flitman to his insuror and coverage was denied contrary to the facts in De Cespedes. De Cespedes does not apply under these facts.
Liberty also seeks reversal because the trial judge struck the sixth defense which it alleged in its answer.
This defense was predicated on the theory that since Flitman received $2,906 as consideration for the release given to the manufacturer and seller of the yacht he actually received a double recovery by the final judgment of $3,885.06 and the final judgment should be reduced by the $2,906.
The record reflects that Flitman claimed damages from the manufacturer and seller as a result of their selling him a yacht that was inferior for competitive ocean racing. He was a regular competitor in ocean racing and asserted he had sold another yacht at a loss to buy this yacht and it had been represented to him as "the hottest racing boat around" when, in fact, it was not a good racing boat. He testified that his claim against them had a "nuisance value" and as to other items of damages which he had suffered as a result of the purchase of the yacht from the manufacturer and seller. The record does not demonstrate that plaintiff was permitted a double recovery by the final judgment in this cause.
No reversible error having been shown, the final judgment herein appealed is
Affirmed.